```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
JOHN A. ARETAKIS,                             :

                Plaintiff,                    :

        -against-                             :         REPORT and RECOMMENDATION
                                                        10 Civ. 1696 (JSR)(KNF)
FEDERAL EXPRESS CORPORATION,                  :

                Defendant.                    :
------------------------------------------------------X
```

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE JED S. RAKOFF, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

The plaintiff, John A. Aretakis ("Aretakis"), proceeding pro se, commenced this action against the defendant, Federal Express Corporation ("FedEx"), in the New York State Supreme Court, New York County, asserting causes of action for: (1) negligence; (2) breach of contract; and (3) violation of New York General Business Law ("GBL") § 349. On March 3, 2010, FedEx removed the action to this court.

Before the Court is the defendant's motion for summary judgment.[1] The plaintiff opposes the motion.

## BACKGROUND

On or about October 8, 2009, Anna Nolette ("Nolette") tendered a package to FedEx, a certified air carrier, for overnight delivery to Aretakis. See Affidavit of Jacqueline Fowler ("Fowler Aff.") Exs. A, B. The package traveled under FedEx Airbill No. 8709 3774 7372 (the "Airbill"), which contained, inter alia, the following terms and conditions:

---

[1] The defendant seeks summary judgment on the plaintiff's negligence and GBL § 349 causes of action, and a determination that its liability with respect to the plaintiff's breach of contract action may not, as a matter of law, exceed $100.

> Agreement To Terms. By giving us your package to deliver, you agree to all the terms on this Airbill and in the current FedEx Service Guide, which is available upon request. You also agree to those terms on behalf of any third party with an interest in the package. If there is a conflict between the current FedEx Service Guide and this Airbill, the current FedEx Service Guide will control. No one is authorized to change the terms of our Agreement.
>
> ***
>
> Limitations On Our Liability And Liabilities Not Assumed. Our liability in connection with this shipment is limited to the lesser of your actual damages or $100, unless you declare a higher value, pay an additional charge, and document your actual loss in a timely manner. You may pay an additional charge for each additional $100 of declared value. The declared value does not constitute, nor do we provide, cargo liability insurance.[2]

Nolette indicated on the Airbill that her shipment to Aretakis could "be left without obtaining a signature for delivery." Nolette did not declare a value for her shipment. FedEx records show it attempted to deliver the package to Aretakis on October 9, 2009, at 4:16 p.m. Rather than leave the package at the address on the Airbill that day, FedEx retained custody of the package until it was delivered to Aretakis on October 12, 2009. According to the FedEx Service Guide, in effect in October 2009, FedEx has discretion to refrain from delivering a package, notwithstanding a shipper's election to have a package left without requiring FedEx to obtain a signature. See Fowler Aff. Ex. D, at 146.

According to Aretakis, on the evening of October 9, 2010, he called FedEx and spoke with a customer service "supervisor named Kimberly in Bristol Cap, Virgina." According to Aretakis, "[Kimberly] guaranteed that the package would be delivered to [him] on Saturday, October 10 or

---

[2] Like the Airbill, the FedEx Service Guide, in effect in October 2009, limits FedEx's liability for overnight express package services to $100, "unless a higher value is declared and paid for[.]" See Fowler Aff. Ex. D, at 140. The only material difference between the Airbill and the FedEx Service Guide, for the purposes of this action, is that the FedEx Service Guide may be altered. However, the Service Guide advises that "[o]nly an officer in the Legal Department of FedEx Corporation may authorize a supplement to, or modification, change or amendment of, the FedEx Service Guide." Fowler Aff. Ex. D, at 136.

2

Sunday, October 11, 2009." Aretakis contends that Kimberly told him that she had the "authority to [do] what she said she would do to guaranty" delivery to Aretakis by October 11, 2009. Aretakis posits that his conversations with Kimberly formed a new, oral contract of carriage between him and FedEx, which superceded the contract between Nolette and FedEx. Under this purported oral contract, FedEx became not only the carrier, but the shipper of Nolette's package. According to Aretakis, his oral contract with FedEx is not governed by the terms and conditions of the Airbill or the provisions of the FedEx Service Guide. FedEx's records show that Nolette's package traveled continuously under the Airbill until it was delivered on October 12, 2009. See Fowler Aff. Ex. E.

In support of its motion for summary judgment, FedEx submitted the affidavit of Jennifer T. Gaia ("Gaia"), a FedEx customer service manager who is responsible for: (1) overseeing the training of FedEx employees who respond to customer telephone calls about lost, damaged or delayed packages; and (2) managing the FedEx personnel who would have responded to Aretakis' telephone call. In her affidavit, Gaia explains that FedEx's customer service personnel are specifically trained not to make promises about when a package will be delivered if it "is already late for its original delivery time." Furthermore, according to Gaia, FedEx customer service personnel are not authorized "to enter into any type of 'contract' or 'agreement' with the customers they talk to on the telephone or to make specific promises of any nature."

In its motion for summary judgment, FedEx contends that: (1) the plaintiff's negligence and GBL § 349 causes of action are preempted by the Airline Deregulation Act ("ADA"); and (2) the plaintiff's recovery on his breach of contract cause of action is limited to $100 because he is bound by the terms of the contract of carriage entered into by Nolette, who did not declare a value for the package she shipped. Aretakis contends the arguments advanced by FedEx do not apply to the oral contract he made with FedEx, via Kimberly.

3

DISCUSSION

**I. Standard**

Summary judgment should be granted when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. See Huminski v. Corsones, 396 F.3d 53, 69 (2d Cir. 2005). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law. An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 212 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 [1986]). In determining whether a genuine issue of material fact exists, a "district court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought." St. Pierre v. Dyer, 208 F.3d 394, 404 (2d Cir. 2000). "[T]he court is not entitled to weigh the evidence" and "if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Id.

The movant "bears the [] responsibility [for] informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). This means that neither hearsay assertions made in an affidavit that would be inadmissible at trial, if testified to by the affiant, nor conclusory assertions are sufficient to create genuine issues for trial. See Patterson v.

County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004).  "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the facts; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or (4) issue any other appropriate order."  Fed. R. Civ. P. 56(e).

## II. Application

### A. ADA Preemption

The Supremacy Clause of the United States Constitution provides that any state law conflicting with a federal law is preempted, that is, "without effect."  Maryland v. Louisiana, 451 U.S. 725, 746, 101 S. Ct. 2114, 2128-29 (1981).  "Preemption can be either express or implied.  Express preemption arises when a federal statute expressly directs that state law be ousted.  Implied preemption arises when, in the absence of explicit statutory language, . . . Congress intended the Federal Government to occupy [a field] exclusively, or when state law actually conflicts with federal law.  More specifically, preemption is implied when the pervasiveness of the federal regulation precludes supplementation by the States, where the federal interest in the field is sufficiently dominant, or where the object sought to be attained by the federal law and the character of obligations imposed by it . . . reveal the same purpose."  Air Transp. Ass'n of Am., Inc. v. Cuomo, 520 F.3d 218, 220-21 (2d Cir. 2008) (internal citations and quotations omitted).  The Supreme Court has cautioned that in order to avoid "an unintended encroachment on the authority of the States . . . a court interpreting a federal statute pertaining to a subject traditionally governed by state law [should] be reluctant to find pre-emption."  CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 664, 113 S. Ct. 1732, 1737-38 (1993).  Preemption exists only in those circumstances where it is "the clear and manifest purpose of Congress."  Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S. Ct. 1146,

1152 (1947).

In 1978, Congress enacted the ADA, an economic deregulation statute, to ensure that states would not interfere with Congress' determination to deregulate the airline industry and allow market forces to achieve efficiencies and economies in that industry.  See Morales v. Trans World Airlines, Inc., 504 U.S. 374, 378-79, 112 S. Ct. 2031, 2034 (1992).  The ADA expressly prohibits states from enacting or enforcing "a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier . . . ."  49 U.S.C. § 41713(b)(1).

Interpreting the ADA, the Supreme Court has held: "(1) that [s]tate enforcement actions having a connection with, or reference to carrier rates, routes, or services are pre-empted; (2) that such pre-emption may occur even if a state law's effect on rates, routes or services is only indirect; (3) that, in respect to pre-emption, it makes no difference whether a state law is consistent or inconsistent with federal regulation; and (4) that pre-emption occurs at least where state laws have a significant impact related to Congress' deregulatory and pre-emption-related objectives."  Rowe v. New Hampshire Motor Transp. Ass'n, 552 U.S. 364, 370-71, 128 S. Ct. 989, 995 (2008) (quoting Morales, 504 U.S. at 378, 112 S. Ct. at 2034)( internal quotations, citations and emphasis omitted).  Despite the Supreme Court's holding, "[t]he 'related to' language of the ADA provides neither a predictable nor practicable formula for distinguishing preempted from non-preempted state and local laws."  Abdu-Brisson v. Delta Airlines, Inc., 128 F.3d 77, 82 (2d Cir. 1997).  Accordingly, the Second Circuit Court of Appeals has advised that the ADA's preemption clause must be applied "on a case-by-case basis."  Id. at 86.

Supreme Court jurisprudence makes clear that the ADA's preemption language does not bar Aretakis from prosecuting a breach of contract cause of action.  See Am. Airlines, Inc. v. Wolens, 513 U.S. 219, 115 S. Ct. 817 (1995) (ADA's preemption clause does not prevent party from obtaining relief when airline breaches the parties' contract).  Conversely, the Supreme Court has

6

noted that state deceptive business practice laws, when applied to the airline industry, relate to airline prices, routes and services and, consequently, are preempted by the ADA. Id., 513 U.S. at 227-28, 115 S. Ct. at 823-24. Hence, Aretakis cannot pursue his GBL § 349 cause of action[3] against FedEx, as a matter of law. See In re Jetblue Airways Corp. Privacy Litig., 379 F. Supp. 2d 299, 315 (E.D.N.Y. 2005)(finding GBL § 349 "claim fits squarely within the range of state law actions that the Supreme Court concluded, in Wolens and Morales, are expressly preempted by the ADA.").

In analyzing the plaintiff's negligence cause of action, in light of the ADA's preemption clause, the Court has considered several factors including whether: (1) the activity which is the subject of the cause of action – timely parcel delivery – is a service of the air carrier; (2) the cause of action, as asserted, has a direct or tenuous, remote or peripheral effect on FedEx's rates, routes or services; and (3) the cause of action will have a significant impact that relates to the deregulatory and preemption-related objectives of Congress. See Rowe, 552 U.S. at 370-71, 128 S. Ct. at 995.

Aretakis' negligence cause of action implicates the sole service which FedEx provided: transporting and delivering Nolette's package. Granting Aretakis the right to prosecute his negligence cause of action would have a direct effect on the delivery service FedEx provides and how it provides it. The FedEx Service Guide, which applies to any package FedEx transports between points in the United States, see Fowler Aff. Ex. D, at 136, gives FedEx discretion to deliver a package or to refrain from doing so, as the circumstances confronting its delivery personnel dictate, even when a shipper determines a package may be left for a recipient, without FedEx obtaining a delivery signature. The plaintiff's negligence cause of action has the potential to strip FedEx of this discretion and alter the manner in which it provides its package transportation and delivery services.

---

[3] "To maintain a cause of action under [GBL] § 349, a plaintiff must show: (1) the defendant's conduct is consumer-oriented; (2) that the defendant [] engaged in a deceptive act or practice; and (3) that the plaintiff was injured by this practice." Wilson v. Northwestern Mut. Ins. Co., 625 F.3d 54, 64 (2d Cir. 2010).

Exposing FedEx to liability for negligence for exercising discretion in its delivery decisions may also have a direct impact on the fees it charges for its services, as it is likely to pass on any added costs associated with this exposure to its customers. Based on the record before it, the Court cannot assess adequately the impact that a delivery-related negligence cause of action against FedEx would have on Congress' goal of allowing market forces to achieve economies and efficiencies in a deregulated airline industry. However, inasmuch as the Court finds that permitting the plaintiff to prosecute his negligence cause of action implicates, and has a direct effect on, FedEx's package transportation and delivery services, the cause of action should be deemed preempted by ADA. See Morales, 504 U.S. at 384, 112 S. Ct. at 2037.

**B. Contract of Carriage**

An airbill is the basic contract between a shipper and a carrier. See Southern Pacific Transp. Co. v. Commercial Metals Co., 456 U.S. 336, 102 S. Ct. 1815, 1817 (1982). It is undisputed that, on or about October 8, 2009, Nolette entered into a contract of carriage with FedEx, under which FedEx agreed to deliver, overnight, a package to Aretakis. The terms and conditions of the contract are set forth in the Airbill. Through that contract, Nolette bound herself and "any third party with an interest in the package" to the terms on the Airbill and in the FedEx Service Guide. See Fowler Aff. Ex. C, at 2.

Aretakis had an interest in the package Nolette tendered to the defendant, as he is identified on the Airbill as the recipient. See Fowler Aff. Ex. B. Moreover, in opposing the defendant's motion, Aretakis made his interest in the package clear, by recounting the efforts he made to contact FedEx's customer service representative and ensure that the package would be delivered to him, after it was not left at his address on October 9, 2009. As a third party with an interest in the package, Aretakis was bound to all the terms on the Airbill and in the FedEx Service Guide. This includes the language on the Airbill which explains that "[n]o one is authorized to change the terms of [the]

Agreement."

Aretakis ignores this contract language – to which Nolette bound him when she agreed to have FedEx deliver her package to him – and, instead, maintains that he and FedEx's customer service supervisor, Kimberly, were authorized to cancel the Nolette-FedEx contract of carriage and enter into a new, oral contract for shipping Nolette's package to him. Aretakis has not presented any evidence that Nolette authorized him to cancel her contract with FedEx. Although Aretakis asserts that an oral contract was formed, by his telephone conversations with Kimberly, and that she guaranteed the package would be delivered either on October 10 or 11, 2009, he has not submitted any evidence that controverts the evidence provided by Gaia, establishing that FedEx's customer service personnel are: (1) "not authorized to enter into any type of 'contract' or 'agreement' . . . or to make specific promises of any nature "when they speak to FedEx customers via telephone; and (2) "trained not to make specific promises as to when a package will be delivered if the package is already late for its original delivery time."

In the circumstance of the instant case, Aretakis' conclusory assertion, that an oral contract for shipping Nolette's package to him was created by his telephone conversations with a FedEx customer service representative, is insufficient to create a genuine issue for trial. See Patterson, 375 F.3d at 219. Even if, as Aretakis alleges, an oral contract of carriage was formed with FedEx based on his telephone conversations with Kimberly – and the record before the Court does not support such a finding – that contract would be subject to the terms and conditions in the FedEx Service Guide. This is so because the uncontradicted record evidence establishes that the FedEx Service Guide applies to "any package" FedEx transports "between points within the U.S." Fowler Aff. Ex. D, at 136. Aretakis' conclusory statement that the Service Guide does not apply to the alleged oral contract, without more, is to no avail. The FedEx Service Guide contains the same $100 limit on liability language as the Airbill, and the terms of the FedEx Service Guide may only be altered by an

9

officer in FedEx's Legal Department. Aretakis has proffered no evidence to establish that he declared a value for the package transported under his purported oral contract or that he paid FedEx for the declared value. Aretakis also has not evinced that Kimberly was an officer in FedEx's Legal Department, who would have had the authority to alter the terms of the FedEx Service Guide. Hence, even if Aretakis could demonstrate that he entered into an oral contract with FedEx, which cancelled and superceded the Nolette-FedEx contract, the oral contract would ultimately be subject to the same $100 limit on liability provision in the Nolette-FedEx agreement.

The Restatement Second of Contracts explains that a person may be regarded as an intended or third-party beneficiary of a contract if performing the underlying promise will satisfy the promisee's obligation to pay money to the beneficiary or the circumstances show that the promisee intends to give the beneficiary of a contract the benefit of the promised performance. See Restatement (Second) of Contracts § 302(1)(b) (1981). A third-party beneficiary of a contract has no greater rights than the promisee. United Steelworkers of Am. v. Rawson, 495 U.S. 362, 375, 110 S. Ct. 1904, 1913 (1990). Here, Nolette, the promisee, by naming Aretakis the recipient of the package being transported for her by FedEx, evidenced her intent to give Aretakis the benefit of FedEx's promised performance. Aretakis, as the third-party beneficiary of the Nolette-FedEx contract, gained no greater rights than Nolette had to recover damages for FedEx's failure to deliver Nolette's package to him on October 9, 2009. Inasmuch as Nolette elected not to declare a value for the package she sent to Aretakis, FedEx's liability to her is limited, by the language on the Airbill, to the lesser of her actual damages or $100. Since Aretakis has no greater rights than Nolette had under her contract with FedEx, see United Steelworkers of Am., 495 U.S. at 375, 110 S. Ct. at 1913, FedEx's liability to Aretakis, if any, is limited to the lesser of Nolette's actual damages or $100.

## RECOMMENDATION

For the reasons set forth above, I recommend that your Honor grant the defendant's motion for summary judgment (Docket Entry No. 15), dismissing the plaintiff's negligence and GBL § 349 causes of action, with prejudice, and limiting FedEx's liability with respect to the breach of contract cause of action, as a matter of law, to the lesser of Nolette's actual damages or $100.

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Jed S. Rakoff, 500 Pearl Street, Room 1340, New York, New York, 10007, and to the chambers of the undersigned, 40 Foley Square, Room 540, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Rakoff. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S. 140, 145, 106 S. Ct. 466, 470 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 58-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237 (2d Cir. 1983).

Dated: New York, New York
February 2$\cancel{2}$, 2011

Respectfully submitted,

_Kevin Nathaniel Fox_
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Copy mailed to:
John A. Aretakis
Olivia M. Gross, Esq.

11